UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re: DAVID WAYNE JACKSON,    No. 16-12666-j7

Debtor.

## MEMORANDUM OPINION

THIS MATTER is before the Court on the Chapter 7 Trustee's Application for Compensation ("Fee Application"). *See* Docket No. 112. Debtor, David Wayne Jackson, *pro se*,[1] (hereinafter, Mr. Jackson) objected to the Fee Application, asserting that the Chapter 7 Trustee should not be awarded any compensation because of his alleged mishandling of the estate. *See* Docket No. 115. The Court held a final, evidentiary hearing on the Fee Application on March 18, 2019 and took the matter under advisement. After careful consideration of the Fee Application and the evidence presented at the final hearing, and being otherwise sufficiently informed, the Court finds that the Fee Application should be granted.

FACTS AND PROCEDURAL HISTORY[2]

Mr. Jackson is a 73 year old black man. He will tun 74 this year. He is a four-year veteran of the armed forces and served in Vietnam. While in the Air Force, Mr. Jackson served as a weapons and nuclear weapons loader, with a top secret security clearance. Since 1984, Mr. Jackson has lived in Clovis. He attended Eastern New Mexico University in Portales, New Mexico. In 1997, he earned a master's degree in psychology and counseling. Mr. Jackson opened a group home called New Vision Group Home and Shelter in 2003 and served as its clinical director and as a therapist until the home was closed in March of 2017. New Vision Group

---

[1] Mr. Jackson initially had bankruptcy counsel to represent him. Even though the docket reflects that Mr. Jackson's counsel of record has not withdrawn, Mr. Jackson acknowledges that he is no longer represented by counsel and has been proceeding *pro se*.

[2] With the parties' consent, the Court took judicial notice of all of the documents filed of record in Mr. Jackson's bankruptcy case and in Adversary Proceeding Nos. 17-1049 j and 17-1963 J.

Home, a New Mexico General Partnership a/k/a New Vision Group Home and Shelter ("New Vision") filed a Chapter 11 bankruptcy case on September 13, 2016 as Case No. 16-12286-j11.[3] New Vision did not pay all required gross receipts taxes. At the time, Mr. Jackson believed his partner in New Vision had been paying the gross receipts taxes. Mr. Jackson is personally liable for the unpaid gross receipts taxes.

Mr. Jackson filed a voluntary petition under Chapter 7 of the Bankruptcy Code on October 28, 2016. *See* Docket No. 1. Mr. Jackson was then represented by bankruptcy counsel. *Id.* Clarke C. Coll ("Chapter 7 Trustee") was appointed Chapter 7 trustee. *See* Docket No. 6. Mr. Jackson was granted a discharge on February 21, 2017. *See* Docket No. 20.

Mr. Jackson scheduled the following real property in his bankruptcy schedules:

    2831 Gerry Place, Las Vegas, Nevada (the "Las Vegas Property");[4]

    3209 Mandell Circle, Clovis, New Mexico ("Residence");

    3205 Mandell, Clovis, New Mexico ("Rental Property A");

    3204 Mandell, Clovis, New Mexico ("Rental Property B"); and

    1420 PR Lyons, Clovis, New Mexico

*See* Docket No. 11. The value of the Las Vegas Property in Schedule A/B is listed as $120,000. *Id.* Mr. Jackson testified that he really did not think much about the value of the Las Vegas Property disclosed in his bankruptcy schedules because he did not think he would lose the Las Vegas Property as a result of his bankruptcy. As of the petition date, Mr. Jackson's daughter

---

[3] New Vision later converted from Chapter 11 to Chapter 7. *See* Case No. 16-12286-j7 – Docket No. 59. New Vision's Chapter 7 case was closed on March 29, 2018. At the final hearing on the Fee Application, Mr. Jackson alleged that Chapter 7 Trustee improperly contacted the State of New Mexico Children, Youth and Families Department ("CYFD"). A letter from CYFD to Mr. Jackson dated March 1, 2017 was admitted into evidence as Exhibit A. The letter was filed in the New Vision bankruptcy case, not Mr. Jackson's individual bankruptcy case. No evidence was presented to substantiate Mr. Jackson's claim that the Chapter 7 Trustee contacted CYFD.

[4] Schedule A identifies the property as Unit 2921. *See* Docket No. 1. The proper unit number is Unit 2926. *See* Docket No. 28.

lived in the Las Vegas Property; she did not pay rent. Mr. Jackson scheduled a debt to the State of New Mexico Taxation and Revenue Department ("NMTRD") for unpaid gross receipts taxes in the amount of $734,889.55. *Id.*

*Meeting of Creditors*

Mr. Jackson attended the meeting of creditors conducted in his bankruptcy case in Roswell, New Mexico. Mr. Jackson testified at the hearing on the Fee Application that he felt that the Chapter 7 Trustee was disrespectful to him in the way he asked Mr. Jackson questions at the meeting of creditors. An audio recording of the meeting of creditors was played into the record at the final hearing on the Fee Application. At the meeting of creditors, the Chapter 7 Trustee questioned Mr. Jackson about his assets listed on his schedules. When Mr. Jackson testified at the meeting of creditors that he gambled and has had gambling losses, the Chapter 7 Trustee commented that if Mr. Jackson stopped gambling he might be able to pay some debts back. The audio recording of the meeting of creditors does not support Mr. Jackson's contention that the Chapter 7 Trustee was disrespectful toward Mr. Jackson, or treated Mr. Jackson differently from other debtors because of his race.

*Clarke Coll, Chapter 7 Trustee*

The Chapter 7 Trustee has been on the panel of chapter 7 trustees since 2003 and has served as trustee in thousands of bankruptcy cases since that time. Chapter 7 panel trustees work under the umbrella of the United States Trustee's Office. The Chapter 7 Trustee treated Mr. Jackson fairly and with the same care and consideration he gives to all debtors whose bankruptcy estates he is appointed to administer. Chapter 7 trustees routinely question debtors about possible gambling and gambling losses, and if there is a concern about some issue relating to gambling the United States Trustee may investigate further. There is no evidence that would support a

-3-

Case 16-12666-j7    Doc 128    Filed 05/10/19    Entered 05/10/19 13:46:27 Page 3 of 14

finding that the Chapter 7 Trustee mistreated Mr. Jackson or otherwise discriminated against Mr. Jackson because of his race.

*Administration of the Bankruptcy Estate*

In March of 2017, the Chapter 7 Trustee determined that there were bankruptcy estate assets to be administered in Mr. Jackson's Chapter 7 case. *See* Trustee's Report of Assets – docket entry on March 29, 2017. He performed tax lien searches to determine whether any of the real property listed in Mr. Jackson's Schedule A/B was encumbered. He determined that the Las Vegas Property was the estate's primary, unencumbered asset. Mr. Jackson's other significant assets were his Residence, Rental Property A, and Rental Property B (together, the "Mandell Properties"). Each of those properties has approximately $10,000 to $12,000 in equity, but because tax liens encumbered those properties, the Chapter 7 Trustee ultimately determined that the sale of those assets would not yield a sufficient benefit to creditors to justify selling the properties.

The Chapter 7 Trustee retained counsel to represent him in the bankruptcy case on May 30, 2017. *See* Docket No. 27. Mr. Jackson has only spoken to the Chapter 7 Trustee two times: at the meeting of creditors and at the final hearing on the Fee Application. Communications with Mr. Jackson during the administration of the bankruptcy estate were conducted through the Chapter 7 Trustee's counsel.

It took some time for the Chapter 7 Trustee to determine whether to sell the Mandell Properties. The Chapter 7 Trustee filed an application to employ Town & Country Real Estate, Inc. to market and sell the Mandell Properties in June of 2017. *See* Docket No. 34. Issues arose concerning the accounting of the rents received from Rental Property B. Coordinating a time for the broker to view the interior of the Mandell Properties also took some effort. In addition, the

Chapter 7 Trustee attempted to negotiate a carve out agreement with the Internal Revenue Service with respect to the tax liens on Rental Property B that would provide a benefit to creditors other than the taxing authorities.

In July of 2017, the Chapter 7 Trustee filed a motion to compel Mr. Jackson to turnover or surrender the Las Vegas Property and the Mandell Properties, and to turnover rental proceeds. *See* Chapter 7 Trustee's Motion to Compel Turnover or Surrender of Real Properties and Rental Proceeds ("Motion for Turnover") – Docket No. 32. The Motion for Turnover did not get resolved until December of 2017. *See* Stipulation Resolving Trustee's Motion for Turnover or Surrender of Real Properties and Rental Proceeds ("Stipulation") – Docket No. 72. Ultimately Mr. Jackson turned over $750 in pre-petition rental proceeds from Rental Property A and/or Property B to the estate. The Chapter 7 Trustee agreed not to seek turnover of the Residence and did not sell the Residence, and determined not to sell Rental Property A or Rental Property B because the value of the properties did not justify the expense of administering those assets.

*Related Adversary Proceedings*

The Chapter 7 Trustee filed two adversary proceedings in connection with Mr. Jackson's bankruptcy case: 1) Complaint seeking turnover of the Las Vegas Property – Adversary Proceeding No. 17-1049 J ("Adversary Proceeding No. 1") filed June 28, 2017; and 2) Chapter 7 Trustee's Complaint for Revocation of Discharge – Adversary Proceeding No. 17-1063 J ("Adversary Proceeding No. 2") filed August 8, 2017. Adversary No. 1 resulted in the entry of a default judgment on August 15, 2017 against Trentina Jackson, Mr. Jackson's daughter who resided in the Las Vegas Property. *See* Adversary No. 1 – Docket No. 15. The Default Judgment ordered Trentina Jackson to turnover the Las Vegas Property to the Chapter 7 Trustee within ten days of the date of entry of the Default Judgment. *Id.*

In Adversary Proceeding No. 2, the Trustee sought to revoke Mr. Jackson's discharge based on his failure to turnover rental proceeds from the Rental Property A and Rental Property B, and based on an allegation that Mr. Jackson failed to schedule real property located at 3501 Corlington, Clovis, New Mexico (the "Corlington Property") on his schedules. *See* Adversary Proceeding No. 2 – Docket No. 1. The Corlington Property was identified in the Certification/Statement Regarding Marital Status as the address of Opal Jackson, Mr. Jackson's non-filing spouse. *See* Docket No. 7. In addition, the Chapter 7 Trustee learned from a search of the Curry County Assessor's records that the Corlington Property was owned by a person named David Jackson.

Counsel for the Chapter 7 Trustee contacted Mr. Jackson's bankruptcy counsel to inquire about the Corlington Property and requested that Mr. Jackson amend his schedules to list the Corlington Property. *See* Exhibit 11. There is no evidence that any explanation of the ownership of the Corlington Property was provided to counsel for the Chapter 7 Trustee before the Chapter 7 Trustee filed Adversary Proceeding No. 2. Ultimately, upon further investigation, the Chapter 7 Trustee confirmed that Mr. Jackson does not own the Corlington Property. Rather, the Corlington Property is owned by Mr. Jackson's son, David Jackson, Jr. *See* Chapter 7 Trustee's Motion to Dismiss Adversary Proceeding – Docket No. 80 and Adversary Proceeding No. 2 – Docket No. 17. Adversary Proceeding No. 2 was resolved by the Stipulation and was ultimately dismissed. *See* Adversary Proceeding No. 2 – Docket No. 18.

*Sale of the Las Vegas Property*

The Chapter 7 Trustee employed Keller Williams Realty Southwest ("Keller Williams") to market and sell the Las Vegas Property. *See* Docket No. 36 and Exhibit J-1. The brokerage listing agreement with Keller Williams reflects a listing sales price of $139,000 for the Las

Vegas Property. *See* Exhibit J-1. The listing price for the Las Vegas Property was based on the realtor's recommendation, and is consistent with the market analysis conducted by Keller Williams. *See* Exhibit 1 (showing a comparable market analysis with prices ranging from a low of $122,000 to a high of $141,335). The Chapter 7 Trustee reasonably relied on the realtor's recommendation and market analysis both with respect to the $139,000 listing price.

On September 29, 2017, the Chapter 7 Trustee filed a motion to approve the sale of the Las Vegas Property for a purchase price of $125,000. *See* Chapter 7 Trustee's Motion to Approve Sale of Real Property Free and Clear of Liens, Claims and Interests ("Motion to Approve Sale") – Docket No. 50. The Chapter 7 Trustee reasonably relied on the realtor in accepting the $125,000 sales price for the Las Vegas Property. The sales price was also higher than the value of the Las Vegas Property stated in Mr. Jackson's bankruptcy schedules.

The deadline to object to the Motion to Approve Sale was October 23, 2017. *See* Docket No. 52. Mr. Jackson did not file an objection to the Motion to Approve Sale. No other objections to the Motion to Approve Sale were timely filed.

Mr. Jackson purchased the Las Vegas Property for $111,000 in 2015. His wife contributed $40,000 towards the purchase price. *See* Opal Jackson's Proof of Claim No. – Exhibit No. J-17.[5] Mr. Jackson believes the Las Vegas Property is worth between $172,000 and $182,000 because it is a two-bedroom condo in a prime location.[6] Mr. Jackson testified that his daughter, who had been living in the Las Vegas Property, offered to purchase the Las Vegas Property from the Chapter 7 Trustee, but that the Chapter 7 Trustee refused to sell it to her. The

---

[5] The Court sustained the Chapter 7 Trustee's objection to Opal Jackson's claim, finding that the funds Ms. Jackson contributed to purchase the Las Vegas Property were community property and did not give rise to a claim against the bankruptcy estate. *See* Memorandum Opinion and Order – Docket No. 104.

[6] Mr. Jackson provided a copy of two internet listings for properties in the same complex reflecting a price of $182,900. *See* Exhibits 24 and 25. It appears from these exhibits that the price may be a listing price. The website reflected on the bottom of the exhibits is: www.seevegashomesforsale.com.

Chapter 7 Trustee testified that he never spoke with Mr. Jackson's daughter, and that to his knowledge, his attorneys never spoke to her about purchasing the Las Vegas Property. The Chapter 7 Trustee was never made aware of any offer Mr. Jackson's daughter may have made to purchase the Las Vegas Property; no written purchase offer from Mr. Jackson's daughter was submitted to the real estate broker or to the Chapter 7 Trustee or was proffered in evidence.

The Court granted the Motion to Approve Sale on October 27, 2017. *See* Docket No. 62. The Chapter 7 Trustee sold the Las Vegas Property for $125,000. *See* Motion to Approve Sale, Exhibit A – Docket No. 50; Trustee's Report of Sale – Docket No. 69. After payment of the closing costs of sale charged to the bankruptcy estate, outstanding, pro-rated real property taxes, outstanding homeowners' association dues and transfer fees, county transfer tax, and the realtor's commission, the net proceeds of the sale to the bankruptcy estate were $106,413.58. *Id.* Although the closing costs exceeded the Chapter 7 Trustee's estimated closing costs at the time the Motion to Approve Sale was filed, the excess was largely attributable to the condition which the tenant left the Las Vegas Property prior to the closing of the sale.

*The Trustee's Fee Application and Final Report*

The Chapter 7 Trustee filed the Fee Application on November 14, 2018. *See* Docket No. 112. The Fee Application reports total receipts of $126,986.83 from the administration of bankruptcy estate property. Of that amount, disbursements of $41,679.32 have already been approved. *Id.* The Fee Application requests total compensation of $10,525.66, consisting of the Chapter 7 Trustee's commission of $9,570.00 plus expenses of $955.66. *Id.* The remaining funds in the estate will be distributed to the State of New Mexico Taxation and Revenue Department ("NMTRD") in partial payment of its allowed priority claim. *Id. See also* Stipulation as to Claim #3 of New Mexico Taxation & Revenue Department – Docket No. 110 (granting NMTRD and

allowed priority claim in the amount of $128,243.30). The bankruptcy estate funds are insufficient to make any distribution on unsecured non-priority claims. *See* Fee Application.

Mr. Jackson's non-filing spouse,[7] Opal Jackson, filed an objection to the Chapter 7 Trustee receiving any money. *See* Docket No. 105.[8] The Chapter 7 Trustee filed the Trustee's Final Report ("TFR") and the Fee Application on November 14, 2018. *See* Docket Nos. 111 and 112. Mr. Jackson filed an objection to the Fee Application on December 3, 2018. *See* Docket No. 115. The Court overruled Opal Jackson's objection to the Fee Application based on her failure to appear at the preliminary hearing on the Fee Application held December 12, 2018. *See* Order Resulting from Preliminary Hearing on Chapter 7 Trustee's Application for Compensation – Docket No. 118.

Consistent with the Fee Application, the TFR lists approved disbursements totaling $41,679.32 and a proposed disbursement of $74,781.85 to the NMTRD in payment of a portion of its allowed priority claim.

DISCUSSION[9]

Section § 704 defines the duties of a Chapter 7 trustee. 11 U.S.C. § 704. Among other things, the Chapter 7 trustee is charged to "collect and reduce to money the property of the estate . . . and close such estate as expeditiously as is compatible with the best interests of parties in interest." 11 U.S.C. § 704(a)(1). The Chapter 7 trustee must also "investigate the financial affairs of the debtor" and "be accountable for all property received." 11 U.S.C. § 704(a)(2) and (4). "'A

---

[7] Mr. Jackson has been separated from his wife, Opal Jackson, for more than a year before Mr. Jackson filed his bankruptcy petition. He and Opal Jackson live in separate residences.

[8] Because the Chapter 7 Trustee had not yet filed a final report or application for compensation, the Court entered an order regarding Opal Jackson's objection to the Chapter 7 Trustee's fees explaining that the objection was premature, and that the Court would set a hearing on Ms. Jackson's objection after the Chapter 7 Trustee filed an application for compensation or request for payment of the Chapter 7 Trustee's commission. *See* Docket No. 107.

[9] Any additional facts contained in the Discussion section of this Memorandum Opinion are part of the Court's findings of fact issued in accordance with Fed. R. Bankr. P. 7052 and Fed. R. Bankr. P. 9014.

chapter 7 trustee is a fiduciary of the estate whose principal duty is to administer estate property so as to maximize distribution to unsecured creditors, whether priority or general.'" *In re Bird*, 577 B.R. 365, 375 (10th Cir. BAP 2017) (quoting *In re All Island Truck Leasing Corp.*, 546 B.R. 522, 532 (Bankr. E.D.N.Y. 2016)). The Chapter 7 trustee liquidates the debtor's non-exempt bankruptcy estate assets for the purpose of distributing the proceeds to the debtor's creditors. *Id.* Once the bankruptcy estate has been administered, the Chapter 7 trustee must "make a final report and file a final account of the administration of the estate." 11 U.S.C. § 704(a)(9).

A Chapter 7 trustee's compensation for administering the bankruptcy estate is limited by 11 U.S.C. § 326, which fixes a percentage fee based on the total disbursements from estate assets.[10] *See also, In re Morreale*, 595 B.R. 409, 414-15 (10th Cir. BAP 2019) ("Section 326(a) caps the maximum compensation a Chapter 7 trustee can receive in a case by establishing a multi-tiered commission formula for calculating a Chapter 7 trustee's reasonable compensation."). Allowance of the Chapter 7 trustee's compensation is subject to a reasonableness requirement. 11 U.S.C. § 326(a) ("[T]he court may allow *reasonable* compensation . . .") (emphasis added); *In re Miniscribe Corp.*, 309 F.3d 1234, 1240-41 (10th Cir. 2002) (the court must assess reasonableness when awarding trustee's compensation under §326). To determine the amount of the trustee's reasonable compensation, 11 U.S.C. § 330(a)(7) directs the Court to "treat such compensation as a commission, based on section 326." 11 U.S.C. §

---

[10] Section 326(a) provides:
> In a case under chapter 7 or 11, the court may allow reasonable compensation under section 330 of this title of the trustee for the trustee's services, payable after the trustee renders such services, not to exceed 25 percent on the first $5,000 or less, 10 percent on any amount in excess of $5,000 but not in excess of $50,0000, 5 percent on any amount in excess of $50,000 but not in excess of $1,000,000, and reasonable compensation not to exceed 3 percent of such moneys in excess of $1,000,000, upon all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor , but including holders of secured claims.

11 U.S.C. § 326(a).

-10-

Case 16-12666-j7    Doc 128    Filed 05/10/19    Entered 05/10/19 13:46:27 Page 10 of 14

330(a)(7). Finally, a Chapter 7 trustee may also be reimbursed for actual, necessary expenses incurred in administering the bankruptcy estate. *See* 11 U.S.C. § 330(a)(1)(B).

The Chapter 7 Trustee requests compensation of fees totaling $9,570.00 and expenses of $955.66. A Chapter 7 trustee's commission is earned under 11 U.S.C. § 326(a) based solely on disbursements to parties in interest. *See* 3 Collier on Bankruptcy, ¶ 326.02[1][e] (Richard Levin & Henry J. Sommer, eds., 16th ed.) ("The trustee's compensation is based upon the monies the trustee distributes to parties in interest."). As explained below, none of Mr. Jackson's objections to the Fee Application merit a reduction in the requested compensation. The Court, therefore, concludes that the Chapter 7 Trustee's commission represents reasonable compensation for the exercise of his duties in administering Mr. Jackson's bankruptcy estate.

*Mr. Jackson's Objections*

Mr. Jackson has repeatedly complained to the Court in prior hearings that he had "the bankruptcy case from hell" and claims that the Chapter 7 Trustee mistreated him because he is a black man. He characterizes his bankruptcy experience as "a hate crime targeting a Black Man." Docket 115. There is no evidence that the Chapter 7 Trustee mistreated Mr. Jackson because of his race. The Chapter 7 Trustee and Mr. Jackson have spoken to each other only two times over the course of the entire bankruptcy case: at the meeting of creditors and at the final hearing on the Fee Application. The audio recording from the meeting of creditors was played into the record at the final hearing on the Fee Application. Having listened to the recording, the Court is completely satisfied that the Chapter 7 Trustee did not mistreat or disrespect Mr. Jackson because of his race. The questions the Chapter 7 Trustee asked Mr. Jackson at the meeting of creditors were routine questions asked of all debtors at their meetings of creditors. Both Mr.

Jackson and the Chapter 7 Trustee treated each other respectfully at the final hearing on the Fee Application.

The Court is also completely satisfied that race did not play any role in any other actions the Chapter 7 Trustee took in connection with Mr. Jackson's bankruptcy case. Mr. Jackson questions why the Chapter 7 Trustee liquidated any of his assets because, in Mr. Jackson's view, he did not have any creditors and did not owe creditors any money. Mr. Jackson overlooks NMTRD's allowed priority claim, which is more than the total receipts the Chapter 7 Trustee received from the administration of the bankruptcy estate assets.

Mr. Jackson also complains that the Chapter 7 Trustee sold the Las Vegas Property for much less than it was actually worth. Mr. Jackson questions why the sales price of $125,000 was much less than the listing price of $139,000. The Chapter 7 Trustee properly and reasonably relied on the real estate broker to assess the value of the Las Vegas Property, list it for sale, and find a purchaser. The sales price ultimately obtained was commensurate with the broker's recommendations and anticipated sales price, and, in fact, was more than the $120,000 value of the Las Vegas Property Mr. Jackson listed in his schedules. Mr. Jackson did not file an objection to the Chapter 7 Trustee's Motion to Approve Sale.

Mr. Jackson also asserts that the commission to the broker and other fees, which brought the net proceeds from the sale of the Las Vegas Property down to $106,413.58, were much too high. The Motion to Approve Sale estimated net proceeds of $111,730.65, a little over $5,000 more than the actual net proceeds. *See* Docket Nos. 50 and 69. Most of the increased costs of sale are attributable to a credit to the sellers for damage because the property was left unclean and in a damaged condition. *See* TFR, Exhibit B at pp. 6-7, reflecting itemized deductions from the proceeds of the sale of the Las Vegas Property.

-12-

Case 16-12666-j7    Doc 128    Filed 05/10/19    Entered 05/10/19 13:46:27 Page 12 of 14

Mr. Jackson also complains that he was not kept informed about the sale of the Las Vegas Property. However, notice of the deadline to object to the Motion to Approve Sale was sent to Mr. Jackson at the Residence. *See* Docket No. 52-1. A Notice of Deadline for Filing Objections to Chapter 7 Trustee's Application to Employ Keller Williams Realty Southwest as Real Estate Brokers ("Notice") was also sent to Mr. Jackson. *See* Docket No. 29-1. The Notice disclosed that Keller Williams believed that the fair market value of the Las Vegas Property was between $122,000 and $137,000. *See* Docket No. 29. Mr. Jackson did not file an objection to the application to employ Keller Williams and did not file an objection to the Motion to Approve Sale. Having failed to timely object to the Motion to Approve Sale at the time the Las Vegas Property was sold, Mr. Jackson cannot now complain that the Chapter 7 Trustee should not be paid his commission based on the sales price of the Las Vegas Property.

Mr. Jackson characterizes the Chapter 7 Trustee's administration of the estate as the misappropriation of money that rightfully belongs to Mr. Jackson. Because the sales price for the Las Vegas Property was for far less than Mr. Jackson contends the property was worth, and because the closing costs were high, Mr. Jackson concludes that the Chapter 7 Trustee has stolen his money. The evidence presented to the Court does not support such conclusions. The closing costs from the sale of the Las Vegas Property were itemized and disclosed in detail in the TFR. *See* Docket No. 111 at pp. 6 -7. A significant portion of NMTRD's allowed priority claim will be paid from the remaining proceeds from the sale of the Las Vegas Property.

CONCLUSION

There is no evidence that the Chapter 7 Trustee was influenced or motivated by race in exercising his duties to administer the bankruptcy estate or that the Chapter 7 Trustee treated Mr. Jackson any differently than any other debtor. The Chapter 7 Trustee properly carried out his

-13-

Case 16-12666-j7    Doc 128    Filed 05/10/19    Entered 05/10/19 13:46:27 Page 13 of 14

duties under 11 U.S.C. § 704 to investigate Mr. Jackson's financial affairs, collect and reduce to money the non-exempt bankruptcy estate assets for the benefit of creditors, and properly account for all property received. The requested fee is based on the commission formula contained in 11 U.S.C. § 326(a), plus actual, necessary expenses as authorized under 11 U.S.C. § 330(a)(1)(B). Based on the foregoing, the Court concludes that the requested compensation is reasonable and that Fee Application should be approved.

The Court will enter a separate order consistent with this Memorandum Opinion.

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: May 10, 2019

COPY TO:

David Wayne Jackson
3209 Mandell Circle
Clovis, NM 88101

Clarke C. Coll
Chapter 7 Trustee
PO Box 2288
Roswell, NM 88202-2288

Edward Alexander Mazel
Attorney for Chapter 7 Trustee
Askew & Mazel, LLC
1122 Central Ave. SW, Suite 1
Albuquerque, NM 87102

z